**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | **CRIMINAL NO. 06-266 (GK)** |
| : | |
| **ERICA JANIFER** : | |
| : | |
| **Defendant.** : | |

**MEMORANDUM IN AID OF SENTENCING**

Defendant Erica Janifer, through counsel, respectfully submits the following Memorandum in aid of her sentencing.

1.      On December 14, 2006, Erica Janifer will come before this Court to be sentenced pursuant to her guilty plea to embezzlement in violation of 18 U.S.C. § 656. According to the Pre-Sentence Report (PSR) prepared by the United States Probation Office, Ms. Janifer's Base Offense Level under the United States Sentencing Guidelines (U.S.S.G.) is 6. The PSR further states that four additional levels are warranted due to the loss amount in this case and that two levels are also added based on the theory that the victim of the offense was a "vulnerable victim." After a two level reduction for acceptance of responsibility, the PSR concludes that Ms. Janifer's Total Offense Level is 10. Based on Mr. Janifer's Total Offense Level and her Criminal History Category (i.e. Category I), the PSR states that Ms. Janifer's sentencing guideline range is 6-12 months (Zone B).

2.      Ms. Janifer's only dispute with the guideline calculations in the PSR relates to the application of a two level "vulnerable victim" enhancement pursuant to U.S.S.G. § 3A1.1.[1] Both

---

[1] The government joins the defense in disputing this enhancement.

the defense and government agree that a two level enhancement pursuant to U.S.S.G. § 3A1.1 is unwarranted and that Ms. Janifer's proper Total Offense Level is 8 rather than 10. Consequently, the government and defense agree that Ms. Janifer's correct sentencing guideline range is 0-6 months.

   3. Regardless of how the Court calculates Ms. Janifer's sentencing guidelines, Ms. Janifer also argues in this Memorandum that, pursuant to 18 U.S.C. § 3553(a), a sentence of time-served[2] is the most reasonable sentence in this case when considering the various mitigating factors which are present.

## ARGUMENT

**I. THE POST-BOOKER SENTENCING FRAMEWORK.**

  Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 125 S.Ct. 738 (2005). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

  Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in Booker – sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect

---

[2] Ms. Janifer has already served one day of incarceration in connection with the instant case.

> for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title

18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After Booker, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

**II.    A TWO-LEVEL ENHANCEMENT UNDER U.S.S.G. § 3A1.1(b)(1) IS INAPPLICABLE IN THIS CASE.**

Under U.S.S.G. § 3A1.1(b)(1), a two level enhancement applies "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." According to the Application Notes for U.S.S.G. § 3A1.1, the "vulnerable victim" enhancement is only reserved for cases where the victim is "unusually vulnerable" or where the victim is "particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, Application Note 2. The PSR writer in the instant case has concluded that, due simply to the age of account holder Odessa Cropper, Ms. Janifer's offense level should be increased by two levels pursuant to U.S.S.G. § 3A1.1(b)(1). The PSR writer fails to offer any evidence indicating that Ms. Cropper was "unusually vulnerable" or that Ms. Cropper was "particularly susceptible to the criminal conduct." Rather, in attempting to justify the enhancement, the PSR writer simply states that "Ms. Cropper was particularly susceptible to the criminal conduct because of her age." PSR, p. 5, ¶ 17.[3]

---

[3] Both the government and defense objected to the "vulnerable victim" enhancement in the PSR. In her response to the objections of both parties, the PSR writer completely neglected to address the issue of whether Ms. Cropper was "unusually vulnerable" or "particularly susceptible to the criminal conduct." Instead, the PSR writer devoted her entire response to addressing an issue raised by the government concerning whether, for purposes of applying U.S.S.G. § 3A1.1(b)(1), the "victim" in this case is Wachovia Bank or Ms. Cropper. While Ms. Janifer

Contrary to the PSR writer's position, cases throughout the various Circuits, including cases relied upon in the PSR, repeatedly hold that a "vulnerable victim" enhancement shall not apply in cases when the enhancement is based simply on the victim's age.  In United States v. Tissnolthtos, 115 F.3d 759 (10th Cir. 1997), it was held that a "vulnerable victim" enhancement pursuant to U.S.S.G. § 3A1.1 was unwarranted where  "the government did not present any evidence of the victim's individual or personal vulnerability" and the "presentence report notes only that the victim was seventy-one years old at the time of the [offense]."  Tissnolthtos at 761.  The court in Tissnolthtos held that the "vulnerable victim" enhancement was improper because "a victim's elderly status, without more, is insufficient to justify a vulnerable victim enhancement."  Id..  Before applying the "vulnerable victim" enhancement, 'the sentencing court must make particularized findings of vulnerability' and '[t]he focus of the inquiry must be on the victim's personal or individual vulnerability.' Id. (quoting United States v. Brunson, 54 F.3d 673, 676 (10th Cir. 1995)).

In United States v. Fosher, 124 F.3d 52 (1st Cir. 1997), another court held that it was improper to apply the "vulnerable victim" enhancement based solely on the victim's age.  In order to apply this enhancement, district courts must address the "individual characteristics" of the particular victim and courts should not make "an 'unusually vulnerable victim' finding based solely on the victim's membership in a particular class."  Fosher at 56.  See also United States v. Smith, 930 F.2d 1450 (10th Cir. 1991) (application of "vulnerable victim" enhancement under U.S.S.G. § 3A1.1 is improper when based solely on victims "elderly" status); United States v. Dupre, 462 F.3d 131, 145 (2d Cir. 2006) (although criminal scheme targeted religiously faithful individuals,

---

adopts the position taken by the government, this Court need not decide this more difficult issue considering that there is not even any evidence showing that Ms. Cropper was a "vulnerable victim."

5

"membership in religious groups cannot, standing alone, make victims 'vulnerable' for purposes of the [vulnerable victim] enhancement"); United States v. Blake, 81 F.3d 498 (4th Cir. 1996) ("[t]hat a victim is elderly, without more, does not justify application of the vulnerable victim enhancement under § 3A1.1"); United States v. McCall, 174 F.3d 47, 50 (2d Cir. 1998) ("age alone is insufficient to support the [vulnerable victim] enhancement"); and United States v. Proffit, 304 F.3d 1001 (10th Cir. 2002) (when determining whether the "vulnerable victim" enhancement applies, "[m]embership in a class of individuals considered more vulnerable than the average individual is insufficient standing alone").

In the instant case, the only evidence which has been presented in an effort to show that Odessa Cropper was "vulnerable" is evidence regarding her age. There is no evidence in this case that Ms. Janifer targeted Ms. Cropper due to Ms. Cropper's age or that Ms. Cropper's age played any role in assisting Ms. Janifer commit the offense.[4] In fact, when Ms. Janifer embezzled money from Ms. Cropper's account, it was typically done when Ms. Cropper was accompanied by a younger family member who remained nearby during the transaction.

Considering that the evidence in this case does not indicate that Ms. Cropper was "unusually vulnerable" or that she was "particularly susceptible" to Ms. Janifer's criminal conduct, a two level enhancement under U.S.S.G. § 3A1.1(b)(1) is unwarranted. Without this enhancement, Ms. Janifer's Total Offense Level under the sentencing guidelines is level 8 and her correct sentencing guideline range is 0-6 months.

---

[4] The government notes that "[t]here is nothing in the record, and nothing was discovered during the course of the government's investigation, which established that Ms. Cropper was targeted because of her age." See PSR, p. 18. The government further notes that "[i]t also does not appear that the potential for successfully committing the offense was enhanced because of Ms. Cropper's age." Id.

### III. A SENTENCE OF TIME-SERVED IS THE MOST REASONABLE SENTENCE IN THIS CASE.

**A.** **Background**.

Erica Janifer and Ms. Janifer's sister both describe Ms. Janifer's childhood as "rough." PSR, ¶¶ 34 & 38. Ms. Janifer's childhood became increasingly unstable after her parents' separation. Ms. Janifer's parents separated when she was only ten years of age. PSR, ¶ 33. After the separation, Ms. Janifer lived with her mother for about one year and then she began living in different households with various relatives. Id.. Initially, Ms. Janifer moved in with an aunt when she was about eleven years of age. Id.. Between the ages of thirteen and fourteen, Ms. Janifer lived with an uncle. From the age of fourteen to the age of nineteen, Ms. Janifer resided with her father. Id..

Despite her unstable upbringing, Ms. Janifer managed to graduate from a local highschool in 1995. PSR, ¶ 54. Immediately after graduating highschool, Ms. Janifer began pursuing a college education at Strayer University. PSR, ¶ 53. Ms. Janifer was pursuing a degree in business management. Id.. Unfortunately, in about 1998, Ms. Janifer felt compelled to discontinue her education at Strayer University "because of parental demands and responsibilities." Id..

During the period in which Ms. Janifer was attending college and for several years thereafter, Ms. Janifer managed to maintain employment and to avoid any contact with the criminal justice system. From about 1996 to 2003, Ms. Janifer worked for various banks in the Washington, D.C. area. During this period Ms. Janifer worked for such banks as First Union Bank, Signet Bank Virginia, Wachovia Bank and Provident Bank of Maryland. During this same period, Ms. Janifer also secured employment at such places as the Department of Agriculture (1996), GAP, Inc. (1998), Cultural Access Worldwide (1999), Crystal Ford (1999) and Value City Department Store (1999 &

2000).

It was during the summer of 2003, while Ms. Janifer was working for Wachovia Bank, that Ms. Janifer got involved in the instant offense. Ms. Janifer committed the instant offense at a time when her life was in chaos. Ms. Janifer was enduring great stress from raising three children, she was experiencing financial difficulties and she was being badly abused by her boyfriend at the time. As a result of the physical abuse Ms. Janifer suffered from her boyfriend in 2003, Ms. Janifer has scars "on her left arm and in between her eyes." PSR, ¶ 39. The abuse Ms. Janifer suffered during this period was so severe that it caused her to be hospitalized in May of 2003 and in December of 2003. PSR, ¶ 41.

Aside from some traffic related incidents, Ms. Janifer has lived a hardworking and law abiding life since her criminal mistakes in the summer of 2003. From August of 2004 to March of 2006, Ms. Janifer was employed as a cab driver in Maryland for Barwood Transportation. PSR, ¶ 58. Ms. Janifer is currently employed "as a part-time shift manager at Sports and Learning Complex Gym in Landover, Maryland." PSR, ¶ 56. Additionally, since April of 2006, Ms. Janifer has been attending Bennett Career Institute in the District of Columbia in an effort to obtain a license in Cosmetology. PSR, ¶ 52. Ms. Janifer currently resides with her three children and she continues to be their primary provider.[5]

Ms. Janifer seriously regrets her behavior of a little more than three years ago and she is extremely remorseful for what she has done. At sentencing, Ms. Janifer is hoping that the court will impose a non custodial sentence so that she will not be removed from her children. Such a sentence

---

[5]Ms. Janifer's children are fourteen, eleven and seven years of age and all three of her children are currently enrolled in school. PSR, ¶¶ 35 & 36 (note: the child which is listed as being ten years of age in the PSR is now eleven years old).

will also afford Ms. Janifer the opportunity to continue working and to continue pursuing her license in Cosmetology.

      **B.**      **18 U.S.C. § 3553(a) Factors**.

A sentence of time-served which is followed by a period of Supervised Release will more than adequately reflect the seriousness of Ms. Janifer's offense. See 18 U.S.C. § 3553(a)(2)(A). Ms. Janifer's offense is a non-violent offense and her felony conviction for the commission of this non-violent offense is considered a serious punishment by Ms. Janifer. This case has resulted in Ms. Janifer's only felony conviction and she will suffer greatly from the rights she will lose as a consequence of her conviction and from now having the label of a convicted felon. Imposition of a period of Supervised Release as an added punishment to her felony conviction is serious punishment for Ms. Janifer and it is a sentence which will adequately reflect the seriousness of the offense. For these same reasons, a sentence of time-served and Supervised Release is a sentence which is consistent with promoting respect for the law and with providing just punishment for Ms. Janifer's offense. See 18 U.S.C. § 3553(a)(2)(A).

Considering that a non-custodial resolution of this case will have a tremendous impact on the quality of Ms. Janifer's life, a sentence of time-served with Supervised Release will provide ample deterrence for Ms. Janifer and anyone else who may consider committing a similar crime. See 18 U.S.C. § 3553(a)(2)(B). A sentence which includes a period of Supervised Release will require Ms. Janifer to regularly report to an officer of the court and there will be certain restrictions placed on Ms. Janifer's liberty while she is on supervision.

When considering Ms. Janifer's limited criminal history, the fact that the conduct involved in the instant offense occurred more than three years ago and when considering the tremendous

improvements she has made to her life since her commission of the instant offense, it is very unlikely that Ms. Janifer will commit any criminal conduct in the future. Therefore, a sentence of time-served will adequately protect the community from any further crimes on the part of Ms. Janifer. 18 U.S.C. § 3553(a)(2)(C).

Finally, when considering the nature and circumstances of the offense along with the history and characteristics of Ms. Janifer,[6] a sentence of time-served is warranted. As discussed above, Ms. Janifer committed the instant offense at an extremely chaotic time in her life. Since the offense, Ms. Janifer has accepted responsibility for her conduct and she has shown that she can live a productive and responsible life. Ms. Janifer is now handling her career goals and her extraordinary family obligations with great responsibility. She is successfully juggling three important activities in her life (i.e. school, work and her responsibility of being the primary care taker for her three children). Any sentence which removes Ms. Janifer from the community will only disrupt her progress and will be a traumatic event for her family. If given a sentence of time-served, Ms. Janifer will be allowed to continue working, going to school and adequately providing for her family.

**C.    Conclusion**.

For the reasons discussed above, regardless of whether this Court finds that Ms. Janifer's guideline range is 0-6 months or 6-12 months, a sentence of more than time-served would be greater than necessary to satisfy the statutory purposes of sentencing. See 18 U.S.C. § 3553(a). A sentence of time-served is a just and fair sentence in this case. Therefore, a sentence of time-served is the most reasonable resolution of this matter.

---

[6] See 18 U.S.C. § 3553(a)(1).

Respectfully submitted,
A.J. Kramer
Federal Public Defender


_____/s/_____
Tony W. Miles
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500